IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CRYSTAL K. BRANDON                                                        PLAINTIFF

            VS.                        Civil No. 3:14-cv-03051-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Crystal K. Brandon, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for child's insurance benefits ("CIB") as a disabled adult and for supplemental security income ("SSI") under Title II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 402(d)(1), 1382c(a)(3)(A), and 1382c(a)(3)(C). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background

On February 2, 2012, an application for supplemental security income was protectively filed on behalf of the Plaintiff, who was then a child under the age of 18, and a claim for childhood insurance benefits as a disabled adult, alleging an onset date of October 17, 2011, due to back problems, anger issues, ADD, ADHD, depression, and social problems. (T. 167-170, 187-189, 190) Her claims were denied initially on June 11, 2012, and upon reconsideration on July 13, 2012. (T. 81-83, 84-87, 90-91, 92-93) Plaintiff requested an administrative hearing (T. 101-102), and the hearing was held on May 22, 2013, before the Hon. Bill Jones, Administrative Law Judge ("ALJ").

-1-

(T. 35-71) Plaintiff was present and represented by her attorney, Frederick S. Spencer. Also present at the hearing were Sarah A. Moore, an impartial Vocational Expert ("VE"), and Alexandra Neal, the Plaintiff's friend and witness. (T. 35, 37)

Plaintiff was 19 years old at the time of the hearing. (T. 38) Plaintiff attended school, in regular classes, until the 10th grade. She then stopped going to school "because people were being rude to me," and she was home-schooled so she "wouldn't be around anyone." She has not yet obtained a GED. (T. 39, 43-44) She has past relevant work ("PRW") experience as a personal care assistant ("PCA") and as a fast food worker. (T. 38, 221) Plaintiff last worked about two weeks before the hearing. (T. 38) She had worked as a PCA for a little over one year, but she was just "stressed out" and decided not to do that anymore. (T. 38) She was working five days per week, for a total of 27 hours per week which was all the hours her employer would give her. (T. 39, 55) She testified that she worked because "I have to support myself somehow and make money." (T. 41, 56) She described being "stressed out" as "I was getting angry and just a little bit of anxiety with the way my patients were treating me . . . fear of my patients being rude to me and getting me stressed out . . . it just made me not want to go to work . . ." (T. 41-43) Plaintiff's aunt, with whom she lived, was "a little bit upset" with her for quitting her job and, with some encouragement from her aunt, Plaintiff admitted that she was looking around for another job. (T. 58)

In a Decision issued on July 15, 2013, the ALJ's findings included: (1) that before attaining age 18, Plaintiff had severe impairments of adjustment disorder with mixed anxiety and depression, mathematics disorder, abandonment issues, ADHD, bipolar disorder, and generalized anxiety disorder; (2) that before attaining age 18, Plaintiff did not have an impairment or combination of impairments that functionally equaled the listings; (3) that Plaintiff was not disabled prior to

reaching age 18; (4) that Plaintiff has not developed any new impairment(s) since attaining age 18; (5) that since attaining age 18, Plaintiff has continued to have a severe impairment or combination of impairments; (6) that since attaining age 18, Plaintiff has not had an impairment or combination of impairments that meets or medically equals a listed impairment; (7) that since attaining age 18, Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the non-exertional limitations of performing work limited to simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any, workplace changes, and no more than incidental contact with co-workers, supervisors, and the general public; (8) that since attaining age 18, and considering Plaintiff's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that Plaintiff has been able to perform; (9) that with regard to her application for SSI, Plaintiff has not been under a disability since she attained age 18 on March 26, 2012 through the date of the ALJ's Decision; (10) that with regard to Plaintiff's application for child's insurance benefits, Plaintiff has not been under a disability from the alleged onset date of October 17, 2011 though the date of the ALJ's Decision. (T. 16-30)

Plaintiff appealed this decision to the Appeals Council (T. 7), but said request for review was denied on March 21, 2014. (T. 1-6) Plaintiff then filed this action on May 12, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs (Docs. 11 and 12), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. To entitled to child's insurance benefits, the claimant must have a disability that began before the attainment of age 22. 42 U.S.C. § 402(d).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful

activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.  Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that with regard to Plaintiff's application for SSI that Plaintiff was not disabled before or after attaining age 18, and that with regard to Plaintiff's claim for child's insurance benefits, that Plaintiff was not disabled from the alleged date of onset on October 17, 2011 through the date of the ALJ's Decision on July 16, 2013. Plaintiff raises three points on appeal, which can be summarized as follows: (A) the ALJ erred in his RFC determination; (B) the ALJ erred in finding that Plaintiff's back pain was not severe; and, (C) a general argument that the ALJ's decision denying benefits is not support by substantial evidence. (Doc. 11, pp. 7-12) Each issue is addressed in turn.

## A.  No Error in RFC Determination

The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the non-exertional limitations of performing work limited to simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any,

workplace changes, and no more than incidental contact with co-workers, supervisors, and the general public. (T. 22-24, 26-29) Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence of record. Specifically, Plaintiff asserts that the ALJ failed to account for Plaintiff's reaction to work-related stress in accordance with SSR 11-2P and SSR 85-15, and that the RFC made no provisions for the "consistently low GAG (sic) scores documented in the course of psychiatric treatment." (Doc. 11, pp. 7-10) The Court disagrees.

It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

## 1.  Work Related Stress

Plaintiff argues that her job history is "littered with work cessations or terminations and

-6-

unsuccessful work attempts that ended due to [her] inability to handle work[']s stress." (Doc. 11, p. 8) Unless "littered" can be construed to mean the same thing as "a few," this is a mis-characterization of the evidence of record. In a Disability Report dated April 9, 2012, Plaintiff states that, "I have never worked." (T. 191) A Work History Report dated June 30, 2012 lists only two fast food jobs, but it does not give the dates "worked from" or "worked to," so it cannot be determined how long Plaintiff worked at those two jobs. (T. 221-228) Plaintiff's testimony does not indicate the duration of those two jobs either, just that, "I feel like every time I get a job, I may do good at it for a while, but then I might start to let it get to me and I feel like I won't continue it, and I'm scared that I'm just going to continue to do that all my life." (T. 55) Plaintiff also testified that she had been working as a personal care assistant and had that job for "a little over a year." (T. 38-39) She got that job upon turning age 18, and she worked five days a week for all the hours (27 per week) that the employer would let her work. (T. 55) She quit the job approximately two weeks before the hearing because she was "stressed out" and decided "not to do that one anymore." (T. 38) She described being "stressed out" as  "getting angry and just a little bit of anxiety" with the way her patients were treating her. (T. 41) She stated that she worked because she had to support herself. (T. 56) She admitted that her aunt, with whom she lived, was upset that she quit her job, and that she had been looking around for another job. (T. 58) Such evidence does not support her contention that her work history is "littered" with work cessations or terminations and unsuccessful work attempts, nor does it support a conclusion that her mental impairments, which she vaguely describes as feeling "stressed out" and "a little bit of anxiety" prevent her from working.

Plaintiff cites SSR 11-2p to support her argument that the ALJ erred in assessing her work-related stress in determining her RFC. (Doc. 11, p. 8) SSR 11-2p indicates that consideration should

be given to impairment-related limitations created by a person's response to the demands of work-related stress when assessing RFC (¶ II(E)(2)), and that regardless of whether the work was SGA, information about how well a young adult performed in job placements can help to assess how the young adult functions - noting that "a young adult who performed OJT placements successfully may have a good ability to respond appropriately to supervision." (¶ II(B))

Plaintiff also cites SSR 85-15 in support of her claims. That Regulation provides, in part, that determining whether individuals with mental illness will be able to adapt to the demands or "stress" of the workplace is often "extremely difficult," and the intent of the "Stress and Mental Illness" section of the Regulation is to "emphasize the importance of thoroughness in evaluation on an individualized basis." Any impairment-related limitations created by an individual's response to the demands of work must be reflected in the RFC assessment.

Here, a review of the record shows that the ALJ took into account the reports and opinions of Plaintiff's treating physicians, the opinions of consultative physicians, and the testimony of Plaintiff and her friend, and he considered the combination of all the Plaintiff's impairments in making his RFC determination. *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). In doing so, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but with non-exertional limitations of performing work limited to simple, routine, and repetitive tasks involving only simple work-related decisions, with few, if any, workplace changes, and with no more than incidental contact with co-workers, supervisors, and the general public. There is substantial evidence to support the ALJ's RFC determination.

In September 2011, Plaintiff presented to Dayspring Behavioral Health Services in Mountain Home, Arkansas for an intake evaluation. Thomas Zurkowski, M.D., conducted a psychiatric

evaluation of Plaintiff, who complained of symptoms of anxiety, depression and anger. Plaintiff reported "a lot of conflict with mother's finacé who is very controlling and wants [Plaintiff's] mother to terminate responsibility of [Plaintiff]." Plaintiff reported that she had to assume responsibility of the home, including control of her child support payments, cooking, and maintaining the home instead of her mother being in control. (T. 270) Dr. Zurkowski noted that Plaintiff "is a knowledgeable person and *may* have bipolar, and/or ADHD and OCD which she has characteristics of all of these." (T. 271) (Emphasis added.) Outpatient care with medication management was recommended, and all medical necessity indicators (i.e., social/relationship problems, family issues, and stressful life circumstances) were documented as "moderate." (T. 268) A GAF of 45 was noted at intake on September 2, 2011, and a GAF of 50 was noted a few weeks later on September 22, 2011. Plaintiff was started on Ritalin (20 mg b.i.d.). (T. 271-272)

On October 20, 2011, Plaintiff's appearance was neat, clean and appropriate; her speech was normal; her mood was normal, irritable; her affect was appropriate; her thought was intact, and she was oriented x 3; her social skills were adequate; her sleep was decreased; and, she was cooperative. She reported medication compliance with no side effects. Dr. Zurkowski commented, "Crystal is diagnosed with ADHD and Bipolar *which may be there* but she is not a classic case," and he prescribed a reduced dose of Ritalin (10 mg t.i.d.) and Trileptal. (T. 263)

On December 14, 2011, Plaintiff was seen by her family physician, Ronald Bruton, M.D., for headaches and an outbreak of facial acne. Dr. Bruton noted that "[s]he uses her cell phones a lot and other electronics, keeps her head bent over watching these," and he advised her to "lay off the electronic devices for a while." Dr. Bruton documented that "[s]he also takes Ritalin for ADD, but she has stopped that," "her school work is still doing well," "I think we can discontinue the Ritalin

altogether," and that "[s]he is stable off the medication." (T. 286)

On March 23, 2012, Dr. Zurkowski noted Plaintiff's appearance was again neat, clean and appropriate; her speech was normal; her mood was normal, anxious; her affect was appropriate; her thought was intact, and she was oriented x 3; her social skills were adequate; her sleep was normal; and, she was cooperative but withdrawn. She reported medication compliance with no side effects. She expressed some jealousy regarding her boyfriend, and she was reassured and told not to be concerned. She was started on Vistaril. (T. 262)

On May 24, 2012, Plaintiff saw Nancy A. Bunting, Ph.D., a consultative examiner, for a mental status evaluation. Dr. Bunting observed that Plaintiff's family situation (a neglectful, nonfunctional mother and threatened abandonment) was likely the cause of her anger, anxiety and depression, which seemed "like fairly understandable responses to her situation." Dr. Bunting saw "NO basis for a diagnosis of bipolar disorder here." (T. 298) She also reported that "ADHD is a rule out diagnosis as there is no evidence for that here. . ." (T. 299) Dr. Bunting diagnosed Plaintiff with adjustment disorder with mixed anxiety and depression, and a mathematics disorder. She assessed a GAF of 50-60. (T. 298) Dr. Bunting opined that Plaintiff can do all her self-care skills (which Plaintiff subsequently reported having no problems with in her Function Report dated June 30, 2012) (T. 232). She noted that Plaintiff had just gotten her driver's license and drives; she shops by herself; she does regular chores like washing dishes, doing laundry, sweeping, vacuuming, cleaning and cooking; she takes care of a cat and two hamsters; and, she spends her time watching television, listening to the radio and music, using the X-Box all night for 8 hours, and chatting on the internet. (T. 298) She documented that Plaintiff communicated and interacted in a socially adequate, intelligible and effective manner. She opined that Plaintiff has some ability to cope with the typical

mental/cognitive demands of basic work-like tasks, to attend and sustain her concentration on basic tasks, to sustain persistence in completing tasks, and to complete work-like tasks within an acceptable time frame. (T. 299-300)

A Psychiatric Review Technique was completed by a non-examining reviewer, Jon Etienne Mourot, Ph.D., on June 1, 2012. Dr. Mourot indicated that Plaintiff's medical impairments were not severe (T. 303), and he diagnosed a mathematics disorder (T. 304) and an adjustment disorder (T. 306). All Paragraph B Criteria of the Listings were noted to be mild, with no episodes of decompensation. (T. 313) Dr. Mourot noted "[n]o evidence of severe cognitive/mental impairment of adaptive functioning for occupational purposes," and stated "impairment not severe." (T. 315) Dr. Mourot's opinions were affirmed on review by Sheri L. Simon, Ph.D. on July 13, 2012. (T. 343)

In a follow up visit on June 7, 2012, Dr. Zurkowski confirmed that Plaintiff was working with a counselor, Joyce Parker, "and is down to taking only the Vistaril/hydroxyzine for sleep and is now living with her Grandmother." Dr. Zurkowski also reported that "[s]he does not think she needs any medication, otherwise." If an impairment that can be controlled by treatment or medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal citation omitted). Dr. Zurkowski advised that he would "encourage Joyce to follow up with her and eval whether she needs further psychotherapy." (T. 326) There is no evidence of record that Plaintiff sought any further psychotherapy or treatment for any mental impairment. *See Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir. 2001)(ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment).

During the relevant time period, the evidence before the Court demonstrates a relatively short

history of treatment for mental impairments (from September 2, 2011 through June 7, 2012) arising, it appears to the undersigned, from temporary situational difficulties associated with a neglectful and non-functioning mother and her threatening fiancé. In light of the evidence of record, including the findings and opinions of Plaintiff's treating physicians, and based on the history of effective medication treatment and psychotherapy (which her physicians discontinued), and further based upon the evaluation of Plaintiff's adaptive functioning by a consultative examiner, there is substantial evidence to support the ALJ's RFC conclusion that, "although the claimant may have some problems functioning[,] the objective evidence of record does not support any marked impairment in adaptive functioning[,] and her symptoms do not preclude her from engaging in simple, repetitive, routine tasks where contact is incidental." (T. 22-23)

## 2.  GAF Scores

Plaintiff also argues that the ALJ erred in not giving her global assessment of functioning ("GAF") scores more evidentiary weight. In essence, Plaintiff claims that her GAF scores in the 45-50 range evidence serious symptoms or serious impairment in social, occupational or school functioning. Upon a review of the record as a whole, the Court cannot agree.

The GAF score is a subjective determination that represents "the clinician's judgment of an individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d at 973. The failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination. *Id.*, citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Quoting from *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006), the Court in *Jones* stated, "[a]ccording to the [Diagnostic and Statistical Manual's] explanation of the [Global Assessment Functioning] scale, *a score may have little or no bearing on the subject's social and occupational*

*functioning . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a [Global Assessment Functioning] score in the first place*." (Emphasis added.) The Court went on to state that the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings,'" and that denials of disability benefits where applicants had GAF scores of 50 or lower have been affirmed. *Jones*, 619 F.3d at 974-75.

We recognize, as the Commissioner points out (Doc. 12, p. 13), that the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM–V") was released in 2013, replacing the DSM–IV. The DSM–V has abolished the use of GAF scores to "rate an individual's level of functioning because of 'its conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" *Alcott v. Colvin*, No. 4:13–CV–01074–NKL, 2014 WL 4660364, at *6 (W.D. Mo. Sept. 17, 2014) (citing *Rayford v. Shinseki,* 2013 WL 3153981, at *1 n. 2 (Vet.App.2013) (quoting the DSM–V)).  However, because the DSM–IV was in use at the time the medical assessments were conducted in this case, the Global Assessment of Functioning scores remain relevant for consideration in this appeal. *Rayford*, 2013 WL 3153981, at *1 n. 2.

Examples given in the DSM-IV, p. 34, of "serious symptoms" include suicidal ideation, severe obsessive rituals, or frequent shoplifting, while examples of "serious impairment in social, occupational, or school functioning" include having no friends and an inability to keep a job. In the present case, Plaintiff's only suicide attempt, and her last suicidal ideation, was at age 15. She was hospitalized overnight and released after holding a knife to her wrist - leaving an imprint - but not cutting. (T. 265-266, 295) The record contains no evidence of any severe obsessive rituals, frequent

-13-

shoplifting, or other problems with the law. The record shows, however, that Plaintiff does have friends, including a boyfriend, that she socializes with (T. 61, 63), that she chats on the internet (T. 299), and that she held a job as a personal care assistant for over a year before quitting the job a couple of weeks before the hearing. (T. 38, 41-42) Such evidence supports the ALJ's determination that Plaintiff's GAF scores "are inconsistent with the evidence of record." (T. 23) The ALJ noted that "they [the GAF scores] are not of much significance in determining disability" (T. 23), and this is consistent with the Eighth Circuit authority cited above. The ALJ did not err by discounting the Plaintiff's GAF scores in considering her functional ability. *See Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015), in which the Court upheld the ALJ's failure to give weight to the GAF score, citing 65 Fed. Reg. 50746, 50764-65 (GAF scores have no direct correlation to the severity requirements in our mental disorders listings).

### B.  No Error in Step Two Analysis

The ALJ did not find that Plaintiff's reported back pain was a severe impairment. (T. 16, 21, 25) Plaintiff contends this was prejudicial error as the ALJ did not consider this impairment in his determination of Plaintiff's RFC. (Doc. 11, p. 11) Plaintiff relies on her testimony that she suffers back pain, that it is aggravated by moving much or standing for very long, and that she has seen physicians on two occasions - on September 12, 2011 and in July, 2012 - when she complained of back pain and received prescription medications. (Doc. 11, pp. 11-12)  For the reasons discussed below, the ALJ's determination that Plaintiff's back pain is not severe is supported by substantial evidence.

An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v.*

-14-

*Yuckert*, 482 U.S. 137, 153 (1987). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Eighth Circuit Court of Appeals has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

Plaintiff testified that she is only pain free in her back a couple of hours per day; that a lot of movement or standing a lot bothers her back; and, that she can't stand for more than thirty minutes. (T. 47) On September 12, 2011, Plaintiff saw Lonnie Robinson, M.D., with complaints of "back and abdominal pain for the past few weeks." (T. 287) An x-ray taken that day was negative. (T. 291) Dr. Robinson felt the problem was musculoskeletal, and he prescribed an anti-inflammatory, Meloxicam (30 tablets and one refill), and an antibiotic, Macrobid. (T. 287) Dr. Robinson did not recommend any restrictions or limitations of Plaintiff's activities. (T. 287) Plaintiff's alleged back pain appears to have resolved, because in follow-up visits to Dr. Robinson's office in December, 2011 and January, 2012, Plaintiff voiced no complaints of back pain, and Dr. Robinson did not renew the prescriptions for Meloxicam or Macrobid. (T. 283-286)

There is no evidence of any further treatment for back pain until July 19, 2012, when Plaintiff

-15-

saw Mary Burr, APN, with complaints of low back pain which, inconsistent with her report to Dr. Robinson on September 12, 2011, she stated "started two years ago." (T. 321) APN Burr referred Plaintiff to physical therapy for evaluation of core muscle strengthening, suggestive of a finding that Plaintiff was out of condition. (T. 322) A muscle relaxant, Flexeril, was prescribed to be taken as needed. (T. 322) APN Burr did not recommend any restrictions or limitations of Plaintiff's activities. (T. 322) There is no record of Plaintiff following through with the referral for physical therapy, nor any medical evidence that she sought any further treatment for her alleged back pain. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (an ALJ may properly consider a claimant's non-compliance with a treating physician's directions).

The ALJ considered the minimal and conservative treatment Plaintiff received for her complaints of back pain, and he correctly determined that the medical evidence of record did not support Plaintiff's claim of disabling back pain. (T. 17) If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); and, *see also Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). There is no medical evidence in the record to establish a functional loss resulting from Plaintiff's alleged back pain.

The Court also notes that despite Plaintiff's statement to APN Burr that she "could not keep a job due to back pain in her mid-back when she has been on her feet for more than 20 minutes" (T. 320-321), this would have been at a time when Plaintiff was working as a PCA, and Plaintiff

-16-

continued to work as a PCA for another nine to ten months before quitting the job two weeks before the hearing on May 22, 2013. *See Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (ALJ properly concluded that, since claimant had been able to work while having the exact same impairments she claimed made her unemployable, she was less than fully credible regarding her inability to work); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (holding that working after the onset of an impairment is some evidence of an ability to work). It is also noteworthy that Plaintiff did not quit her job as a PCA due to her alleged back pain, but because she felt "stressed out," had "a little bit of anxiety" and just decided not to do that job anymore. (T. 38) *See, e.g., Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (finding the claimant did not lose his job because of his disability, he lost it because his position was eliminated).

Considering the evidence as a whole, the ALJ's finding that Plaintiff's alleged back pain was not severe is supported by substantial evidence. The Court, therefore, finds that the ALJ's step two determination is supported by substantial evidence and should be affirmed.

### C. Sufficient Evidence Supports the ALJ's Denial of Benefits

Plaintiff's final point on appeal is a generic argument that if the ALJ's decision denying benefits was not supported by substantial evidence, the case must be reversed or remanded. Plaintiff asserts that "[a]ny objective consideration of the evidence in this case provides persuasive evidence detracting from the ALJ's decision," and that "[t]here is simply no substantial basis for a determination that the claimant is not disabled under the definition of the Act." (Doc. 11, p. 12) For the reasons discussed above, the Court finds that substantial evidence does support the ALJ's denial of benefits in this case.

-17-

## IV.  Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff CIB and SSI benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 7th day of August, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE